UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAWNDELL MORICE KINDER,

               Plaintiff,
    -vs-

**DECISION AND ORDER**
**No. 13-CV-06368(MAT)**

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

               Defendant.
_____

## INTRODUCTION

Plaintiff, Shawndell Morice Kinder ("Plaintiff" or "Kinder"), brings this action under Title XVI of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied her application for Supplemental Security Income ("SSI").

Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, I grant the Commissioner's motion, deny the Plaintiff's motion, and dismiss the Complaint.

## PROCEDURAL HISTORY

On March 5, 2010, Plaintiff filed an application for SSI, alleging disability as of February 1, 2010, which was denied. Administrative Transcript [T.] 150-153, 161-173, 58, 60-65.  At Plaintiff's request, a hearing was held on June 28, 2011 before administrative law judge ("ALJ") Lawrence Levey, at which

Plaintiff, who was represented by counsel, testified, and a vocational expert ("VE") also testified. T. 68-70, 27-56. On July 8, 2011, the ALJ issued a decision finding that Plaintiff was not disabled during the relevant period. T. 16-23.

On February 27, 2013, the Appeals Councils denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. T. 4-7. This action followed.

**FACTUAL BACKGROUND**

Plaintiff, who was born in 1982, graduated from high school and completed some college courses but did not graduate. Plaintiff previously worked as a laborer for a landscaping company and a short order cook in a restaurant. T. 33, 45, 168, 193.

Plaintiff testified that he suffers from back pain, kidney stones, urinary problems, and diabetes. T. 33-34, 36. Plaintiff also testified that his back pain forces him to lay down, that it is difficult for him to "sit certain ways" or ride in a vehicle, and that he can sit for about 20 to 30 minutes before he has to switch positions. T. 36. Plaintiff testified further that because of his uncontrolled diabetes, he has lost hearing and neuropathy has "killed the feeling in [his] arms, legs and feet and hands." T. 36-37. Plaintiff testified that he takes pain pills for his neuropathy, but that these pills "just make him drowsy" and that his hands shake a lot which makes it is difficult for him to hold things. T. 39-40.

Plaintiff lives with his mother and his girlfriend and that they help him with preparing meals, getting dressed, doing the laundry, and cleaning the house, although he tries to help with vacuuming. T. 40. After 10 or 15 minutes of standing on his feet, Plaintiff stated that he needs to either sit or lay down. T. 41. Plaintiff testified that he sleeps the majority of the day, and reads to his two-year old son and watches television when he is awake. T. 42. Plaintiff testified that he does not have a driver's license and that he "gets rides" to and from his appointments. T. 43.

**Relevant Medical Evidence**

Treatment records from Rochester General Hospital show that Plaintiff was seen twice in January 2010 for urinary symptoms and blood in his urine. On the first occasion on January 10, 2010, he was diagnosed with hematuria and hypertension. On the second occasion on January 20, 2010, he was diagnosed with hematuria and discharged in satisfactory condition. T. 201-205. Plaintiff was also seen at Strong Memorial Hospital in January 2010 for blood in his ejaculate and urine, and was diagnosed with hematospermia and hematuria. T. 207-208.

On January 27, 2010, Plaintiff was seen at Rochester General Hospital, complaining of back pain and blood in his urine. Plaintiff was referred to and subsequently saw a urologist who determined that Plaintiff had a urethral obstruction and inserted a catheter until surgery could be scheduled. T. 212-213. In

February 2010, Plaintiff was seen twice at Rochester General Hospital, complaining of intermittent blood in the urine and difficulty urinating. T. 216-218, 219-220. On the first occasion, he was diagnosed with hematuria and discharged to home/self care in satisfactory condition. T. 217-218. On the second occasion, he was diagnosed with hematuria and urinary retention and discharged to home/self care in satisfactory condition. T. 220.

On February 24, 2010, Plaintiff saw Dr. Mini Varghese at the Center for Urology who diagnosed hermatospermia and urinary retention. Plaintiff's physical examination for nodules or prostatic tenderness were negative. T. 245.

Plaintiff was seen again at Rochester General Hospital on February 28, 2010 and March 1, 2010 for problems involving his urinary catheter. T. 221-224. On March 3, 2010, Dr. Varghese removed the catheter and performed a cystoscopy, which revealed a blood clot and stone debris. Plaintiff's catheter was reinserted, and Dr. Varghese assessed hematuria/hematospermia with retention. T. 247.

On April 21, 2010, Plaintiff was seen at the Center for Urology by Dr. Jonah L. Marshall. A biopsy of Plaintiff's bladder showed no evidence of carcinoma, but revealed polypoid cystitis and papillary hyperplasia consistent with acute inflammation. Dr. Marshall reported that this was a benign condition that would likely resolve itself without further intervention. T. 249.

-4-

From June 2010 through May 2011, Plaintiff was seen at
Rochester General Hospital numerous times for a variety of medical
problems, including back pain, numbness in his hands and feet,
uncontrolled diabetes mellitus, hypertension, dyslipidemia,
hyperlipidemia, chest pains, peripheral neuropathy, bilateral leg
pain, an ear infection and sinusitis.  T. 251-261, 263-268, 276-
286.

**Consultative Opinions/Medical Statements**

On May 5, 2010, Plaintiff underwent a consultative examination
with Dr. Harbinder Toor.  Dr. Toor reported a history of low back
pain, history of hypertension, history of diabetes, history of
obesity and history of vision problems.  T. 233.  He opined that
Plaintiff had moderate limitations in standing, walking, sitting
and laying down, moderate to severe limitations in bending or heavy
lifting, and assessed that Plaintiff's obesity and back pain
interfered with his daily routine.  T. 233.

On June 6, 2011, Dr. C. Michael Henderson completed a standard
form medical statement in which he indicated with check-marks that
Plaintiff had Type II diabetes, insulin resistence, and neuropathy.
T. 298.  Dr. Henderson indicated that Plaintiff could work four
hours a day, sit for four hours at a time, and did not indicate the
amount of time Plaintiff could stand.  T. 298.  Dr. Henderson
checked "no" when asked if Plaintiff could lift on an occasional or
frequent basis, and checked "never" when asked if Plaintiff could

-5-

balance.  Dr. Henderson did not provide any additional comments on the standardized form.  T. 299.

**The VE's Testimony**

The ALJ asked the VE to consider a hypothetical person of Plaintiff's age, education, vocational experience, and RFC.  T. 51. The VE testified that such an individual would be able to perform the unskilled sedentary jobs of surveillance system monitor, cutter and paster of press clippings, and telephone solicitor.  T. 51-52.

The ALJ then asked the VE to consider an individual the same as in the first hypothetical except that the individual could occasionally use his right lower extremity for pushing, pulling, or operating foot controls, and that he needed ready access to a restroom facility.  The VE testified that the individual could perform the same jobs identified in the first hypothetical.  T. 53.

**DISCUSSION**

**I. Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405 (g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)(2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such

findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Section 405 (g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II.   The Commissioner's Decision Denying Plaintiff Benefits is Supported by Substantial Evidence in the Record

The Social Security Administration has promulgated a five-step sequential analysis that the ALJ must adhere to for evaluating disability claims.  20 C.F.R. § 404.1520.

The ALJ in this case used this sequential procedure to determine Plaintiff's eligibility for disability benefits.  The ALJ found that Plaintiff:  has not engaged in substantial gainful activity since March 5, 2010, the application date;  has the severe impairments of diabetes, diabetic neuropathy hypertension, hyperlipidemia, and a urinary tract disorder, but does not have an impairment or combination of impairments that meets or medically equals one of the Listed impairments;  is unable to perform his past relevant work, but has the residual functional capacity to perform sedentary work with certain limitations;  and that given his age, education, work experience and RFC, there are jobs that exist in the national economy that Plaintiff can perform.  T. 18-23.  The ALJ therefore determined that Plaintiff has not been under a disability since March 5, 2010, the date the application was filed.  T. 23.

## III. Analysis of Plaintiff's Arguments

Plaintiff challenges the ALJ's RFC assessment on the following grounds: (1) the ALJ erred in failing to describe Plaintiff's "needed sit/stand option" with specificity; (2) the ALJ's indication that Plaintiff requires that access to a restroom be

readily available is not set forth as function-by-function limitation; and (3) the ALJ improperly interpreted the allegedly vague assertions of consultative examiner Dr. Toor.  Pl's Mem (Dkt. No. 15-1) at 11-20.  The Commissioner argues that the ALJ's RFC is proper as a matter of law and is supported by substantial evidence in the record.  Def's Mem (Dkt. No. 14-1) at 13-19.

Here, the ALJ determined that Plaintiff had the RFC to perform:

> sedentary work except that he requires the option of alternating between sitting and standing, can only occasionally utilize his left lower extremity and never utilize his right lower extremity for pushing, pulling, and operation of foot controls, can only occasionally utilize his upper extremities for pushing, pulling and fine manipulation, can only occasionally climb ramps or stairs, is precluded from climbing ladders, ropes or scaffolds and from balancing on narrow, slippery, or erratically moving surfaces, can only occasionally engage in stooping, is precluded from kneeling, crouching, and crawling, and requires that access to a restroom facility be readily available.

T. 19.  For the reasons discussed below, the Court finds that the ALJ's determination is proper as a matter of law and is supported by substantial evidence.

**(A)  Sit/Stand Option**

Plaintiff argues that the ALJ's RFC assessment is flawed because the ALJ was not specific as to the frequency of Plaintiff's need to alternate sitting and standing.  Pl's Mem at 11-15.

Plaintiff is correct that, "[b]ecause the need to alternate between sitting and standing could decrease the jobs that a

claimant could perform, '[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.'" Kouadio v. Astrue, No. 08-CV-881A, 2010 U.S. Dist. LEXIS 127667, 2010 WL 4922672, *6 (W.D.N.Y. Dec. 2, 2010) (quoting S.S.R. 96-9p, 1996 SSR LEXIS 6, 1996 WL 374185 (S.S.A. July 2, 1996)). Here, as presented to the VE and as set forth in his decision, the ALJ explicitly recognized that Plaintiff "requires the option of alternating between sitting and standing." T. 19, 51-53. This implies the ability to change position at-will, and where an ALJ's finding and hypothetical are consistent with an at-will sit-stand option, no greater specificity is required. Miller v. Astrue, No. 11-CV-4103, 2013 U.S. Dist. LEXIS 30129, 2013 WL 789232, *10 (E.D.N.Y. Mar. 1, 2013) (requirement that claimant have "option to sit-stand throughout the day" sufficient statement of frequency); see also Evans v. Astrue, No. 12-CV-6002, 2012 U.S. Dist. LEXIS 176211, 2012 WL 6204219, *8 (W.D.N.Y. Dec. 12, 2012) (citing Thompson v. Astrue, 442 Fed. Appx. 804, 807 (4th Cir. 2011)) (requirement that claimant be able to "sit or stand alternatively" sufficient statement of frequency).

Moreover, the Court finds no merit to Plaintiff's related argument that the ALJ's "vague" reference to the sit/stand option is a failure to develop the record with medical evidence and testimony. Pl's Mem at 14. It is well-settled that the ALJ has an affirmative duty to develop the medical record and seek out further information where the evidence is inconsistent or contradictory, or

where evidentiary gaps exist.  See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).  Here, however, the ALJ thoroughly addressed the well-developed evidence in the record, including Plaintiff's treatment records, the opinion evidence from consultative examiner Dr. Toor, and Plaintiff's own statements with respect to his pain and the limitations imposed by that pain in assessing Plaintiff's RFC.  T. 19-21.  The ALJ's RFC determination that Plaintiff "requires the option of alternating between sitting and standing" was supported by the observations and opinion of Dr. Toor who conducted a physical examination of Plaintiff and assessed that Plaintiff had "moderate limitations" in standing, walking, sitting and laying down.  T. 21, 230-233.  It is well established that the opinion of a consultative examiner can constitute substantial evidence where, as here, it is consistent with the other evidence in the record.  See generally Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995) (opinions of consultative physicians can constitute substantial evidence); see also Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (same).  The ALJ's RFC determination was also supported by Plaintiff's own statements that his back pain limits his ability to sit for more than 20-30 minutes at a time, and that he needs to sit down after standing for 10 or 15 minutes.  T. 19, 36-41.  Where, as here, there are no obvious gaps, and the record presents "a complete medical history," the ALJ is under no duty to seek additional information before rejecting a claim.  See Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996).

Accordingly, the Court finds that the ALJ's RFC finding, which allowed for the maximum degree of flexibility in alternating positions, was proper as a matter of law and is supported by substantial evidence.

**(B) Access to a Restroom Facility**

Plaintiff argues that the ALJ's RFC is flawed because the ALJ's requirement that access to a restroom facility be readily available is not set forth as a function-by-function limitation, as required by Social Security Ruling 96-8p.  Pl's Mem at 15-17.

RFC is defined as:  "what an individual can still do despite his or her limitations."  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Id. SSR 96-8P, 1996 SSR LEXIS 5 provides, in part, that:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

In this case, the ALJ found that Plaintiff had the RFC to perform sedentary work with certain exceptions, one being that

"access to a restroom facility be readily available."  T. 19.
Plaintiff claims that this determination fails to take into account
the frequency and duration of the restroom breaks.  Pl's Mem at 16.
Plaintiff maintains that, while the ALJ acknowledged Plaintiff's
urinary problem as a severe impairment, "he fails to set forth the
manner in which the bathroom breaks would affect Plaintiff in the
workplace."  Pl's Mem at 16.  The Court finds no merit to this
argument because, as the ALJ noted in his decision, there is no
medical evidence in the record to substantiate Plaintiff's specific
allegation that his urinary problem causes him to urinate more
frequently (or for a longer duration) than normal.  T. 20-21.

There is no dispute that Plaintiff had a history of ongoing
urinary symptoms throughout 2010, which eventually required
catheterization.   T.  20-21,  212-215.   Further,  Plaintiff's
treatment records clearly show that Plaintiff's ongoing urinary
symptoms in 2010 resulted in a cystoscopy with bladder biopsy and
fulguration.   However,  these  same  records  also  show  that
Plaintiff's urinary cystologies and cultures were found to be
negative, and that he was voiding well without blood in his urine.
T. 20, 245-250.  The ALJ also pointed out in his decision that
Plaintiff testified that he received no recent treatment for any
adverse  urinary  symptoms,  including  urination  frequency  or
otherwise.  Nor had any physician opined that Plaintiff suffers
from functional limitations as result of his urinary issues.
Dr. Toor consultatively examined Plaintiff in May 2010 and noted

Plaintiff's history of hospitalizations for "urinary bleeding," and "urinary problem, possible infection," but his examination did not result in a diagnosis of any urinary issues.  T. 230.  Notably, he assessed Plaintiff's prognosis overall as "fair," and explicitly stated in his medical source statement that, "[n]o other medical limitations [are] suggested by today's evaluation."  T. 233.

Accordingly, the Court finds no error in the ALJ's RFC analysis with respect to the plaintiff's need for access to a restroom requirement and the omission of any more specific limitation(s) based upon Plaintiff's urinary impairment.

### (C)  "Vague" Assertions of the Consultative Examiner

Plaintiff argues that remand is warranted on the basis that the ALJ improperly interpreted the "vague" assertions of the consultative examiner in formulating Plaintiff's RFC.  Pl's Mem at 18.

The ALJ stated in his decision that he afforded Dr. Toor's opinion "significant weight, and incorporated [Dr. Toor's] assessed limitations into the claimant's residual functional capacity, as he had the opportunity to evaluate the claimant and his opinion is consistent with the medical evidence of record."  T. 21.  The ALJ also pointed out that, "in an attempt to afford the claimant the benefit of any reasonable doubt, the [RFC] assessed by the undersigned goes well beyond the limitations assessed by Dr. Toor[.]"  T. 21.

Plaintiff argues that Dr. Toor's opinion that Plaintiff's back pain causes "moderate limitations" in standing, walking, sitting and laying down, "moderate to severe limitation" for bending or heavy lifting, and that Plaintiff's obesity and back pain "interfere with his daily routine" are vague and thus insufficient to constitute sufficient evidence to support the ALJ's RFC determination. Pl's Mem at 18 (citing T. 21, 233). In support of this contention, Plaintiff cites to Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000), a Second Circuit case which held that an opinion from a consultative examiner that a claimant has "mild" or "moderate" limitations, "without additional information," are "so vague as to render [the opinions] useless[.]"

Curry, however, is distinguishable from this case. Unlike the "bare-bones" consultative opinion in Curry, Dr. Toor's opinion was well-supported by his own examination of plaintiff and that his findings were also consistent with the other evidence in the record which supported that Plaintiff suffered from back pain, diabetic neuropathy, urinary issues, and hypertension that resulted in some functional limitations, but that these impairments did not prevent him from working altogether. The ALJ, citing to the relevant evidence, thoroughly discussed Plaintiff's physical health history, including his treatments and medications, his diagnostic tests, and the notes from his treating providers. T. 19-21. The ALJ highlighted that, among other things, Plaintiff had not been entirely compliant with the recommended treatments of his

-15-

physicians, that his urinary tests had been negative since his cystoscopy and that he was voiding well, and that his treating providers reported that Plaintiff ambulates with a steady gait, was in no apparent distress, and that his hypertension was under better control.  T. 20-21.  The ALJ also explained how Dr. Toor's opinion with respect to Plaintiff's functional limitations was consistent with his examination observations.   The ALJ pointed out that Dr. Toor's assessment, based upon his examination, that the Plaintiff had full strength and a full range of motion in his extremities, normal dexterity, and a normal gait.  T. 21, 230-233. Additionally, Dr. Toor found that Plaintiff appeared to be in no acute distress, his stance was normal, his cervical spine showed full flexion and extension bilaterally and full rotary movement bilaterally, he had no scoliosis, kyphosis, or abnormality in the thoracic spine, and that his lumbar spine had limited forward and lateral flexion and his rotation was limited with pain in the back. Dr. Toor also found that Plaintiff had no evident subluxations, contractures, anklyosis, or thickening, his joints were stable and non-tender, and he had no redness, heat, swelling or effusion. T. 232.  He also found that Plaintiff's extremities showed no cyanosis, clubbing or edema, his pulses were physiologic and equal, he had no significant varicosities or trophic changes and that no muscle atrophy was present.

Accordingly, the Court finds that the ALJ properly assessed the opinion of consultative examiner Dr. Toor and that the ALJ's

physical RFC determination is therefore supported by substantial evidence in the record.   See generally Diaz, 59 F.3d at 315.

### CONCLUSION

The Commissioner's motion for judgment on the pleadings is granted, the Plaintiff's motion is denied, and the Complaint is dismissed in its entirety with prejudice.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     August 21, 2014
           Rochester, New York